### SHERMAN H. TILLERY *v.* STATE OF MARYLAND

[No. 43, September Term, 1967.]

144

Decided February 15, 1968.

The cause was argued before MURPHY, C. J., and ANDER-SON, MORTON, ORTH, and THOMPSON, JJ.

*Calvin E. Johnson* and *Andrew Jackson Graham* for appellant.

*Donald Needle, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Thomas N. Biddison, Jr., Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

PER CURIAM.

Sherman H. Tillery, the appellant, was convicted of assault with intent to rob in the Criminal Court of Baltimore, Judge J. Harold Grady presiding with a jury. The errors alleged appear hereinafter.

Golden Lee, age 63, occupant of the first floor apartment located at 1525 East Madison Street, in Baltimore City, testified that at approximately 10:20 P.M. on April 22, 1965, he was aroused from bed by a knock at his door. The witness related that when he opened his door two men appeared, one of whom, Melvin Logan, announced an intention to rob him. Mr. Lee

was then thrown down and assaulted. While being attacked, Lee was able to draw his pistol and began shooting. Sherman H. Tillery, who was identified as the other person with Logan, started into the apartment behind Logan, and was "trying to get to" the victim. A scuffle ensued during which Tillery was shot. Lee lost his billfold and pistol; the two assailants fled. Mr. Lee did relate that Tillery did not say anything to him at the time of the incident, and that Logan was the active participant. Further testimony showed that Tillery was identified in a lineup by Mr. Lee, although Logan was not.

Officer William Scott related that he saw Tillery at approximately 11:00 P.M. on Guilford Avenue and Lanvale Street at which time Tillery was placed in an ambulance and taken to St. Joseph's Hospital. The officer questioned Tillery at the hospital to determine who had shot him, and to obtain details as to what had happened to him. Tillery, at the time he was spoken to by the officer, was not in custody, and was not suspected of any crime. Tillery told Officer Scott that he had been shot by a man that had tried to rob him in the 1600 block of Barclay Street near the Club 400. Upon investigation, Tillery's information, of course, was found to be untrue. Tillery testified he went to the Lee home to borrow money, but Mr. Lee suddenly pulled his pistol and began firing. When the first shot was fired Logan ran without having entered the premises. Tillery admitted that he grabbed the pistol and struggled with Mr. Lee, but however, denied robbing him.

Melvin Logan also testified as a witness for the defense. He stated that he had known the prosecuting witness, Lee, for a long period of time and knew him to be in the loan business. He stated that he had offered to take Tillery to Lee's house to make a loan. Logan claimed that he stooped down to pick up a pack of cigarettes that had fallen from his pocket and that at that time Mr. Lee began shooting. Logan immediately ran. He was not charged with the offense.

### I Double Jeopardy and Speedy Trial

Tillery was originally tried on June 2, 1965, when he was convicted of assault with intent to rob, but the conviction was remanded on appeal, January 12, 1966, because of *Schowgurow*

*v. State,* 240 Md. 121, 213 A. 2d 475. A retrial on February 6, 1967 did not place Tillery in double jeopardy, as he contends, for he had previously been convicted under an invalid indictment, *Sadler v. State,* 1 Md. App. 383, 230 A. 2d 372, *Gee v. State,* 2 Md. App. 61, 70, 233 A. 2d 336.

He was reindicted May 12, 1966 and arraigned June 9, 1966. On November 22, 1966, Tillery orally requested, for the first time, a speedy trial and objected to the continuance of the case because the prosecuting witness had been hospitalized. On December 14, 1966, the trial was again postponed for the same reasons. On January 9th the state was informed that the witness was then available and suggested trial. On January 17, 1967, the first available trial date, the appellant's counsel was involved in another trial on that date, and requested a later date. Six days later, January 23, 1967, Tillery filed a written motion for a speedy trial. He was tried February 6, 1967. The appellant complains of a denial of a speedy trial.

A determination of a speedy trial motion is not a mere examination of the length of time between the arrest and the trial. The essential ingredient is not speed but "orderly expedition," *State v. Long,* 1 Md. App. 326, 230 A. 2d 119. The accused must demand the right, and if he does not he waives the right. The first request for a speedy trial was November 22, 1966 when Tillery learned that the prosecuting witness was hospitalized. As soon as the witness became available Tillery was tried at the first open date, suitable to his counsel, thereafter. The delay was "not unreasonable, or oppressive or purposeful on the part of the State," *State v. Long, supra,* 1 Md. App. at page 341. On these facts it is obvious that there was no denial of a speedy trial.

## II Oral Statement

Tillery claims the statement he made to the police in the hospital was not admissible and that the trial court was in error in admitting it. The trial judge satisfied himself, by evidence taken out of the presence of the jury, that the statement was voluntary and admissible even though the warnings required by *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 were not given. We agree. At page 1612 of 86 S. Ct. and page 444 of 384 U. S. of *Miranda* the Court said :

"By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. [4]"

In footnote four, the Court stated that "This is what we meant in *Escobedo* when we spoke of an investigation which had focused on an accused." In the case under consideration it is obvious that Officer Scott did not warn Tillery of his constitutional rights, because the appellant was not in custody and the investigation of the robbery was not focused on Tillery. Tillery was merely questioned as a victim of a shooting, and the officer was not aware of any connection between Tillery's wounds and the Lee robbery. The warnings are not required under these circumstances.

### III Use of Perjured Testimony by State

Tillery, in proper person, complains that since the State's Attorney had access to the entire file, grand jury testimony and the prior trial transcript, he was prejudiced because the State's Attorney "deliberately concealed evidence relevant to the case from the trial court and jury." It is obvious from the questions asked by Tillery's counsel of Lee, the prosecuting witness, that counsel had access to his testimony at the prior trial. We can assume that if Mr. Lee's testimony was inconsistent it would have been impeached. Tillery does not point to any particular discrepancies. Furthermore, this issue is not properly before this court as it was not raised below, Maryland Rule 1085.

### IV Line-up

Tillery, also in proper person, complains that established line-up procedures were not followed. Tillery does not point out wherein they were faulty and since the issue was not raised below it cannot be raised for the first time here, Maryland Rule 1085.

### V Sufficiency of the Evidence

The test in reviewing sufficiency of the evidence in a jury case "is whether any relevant evidence was given to the jury which could have sustained the conviction," *Borman v. State,* 1 Md. App. 276, 229 A. 2d 440, *Graef v. State,* 1 Md. App. 161, 228 A. 2d 480.

The victim identified the appellant as one of of the assailants. If believed, this is enough to convict, *Hutchinson v. State,* 1 Md. App. 362, 230 A. 2d 352. The trier of facts is under no obligation to believe the appellant's version, *Logan v. State,* 1 Md. App. 213, 228 A. 2d 837, *Johnson v. State,* 2 Md. App. 486, 236 A. 2d 41. The mere fact that Lee's testimony was inconsistent with Tillery's does not bring it within *Kucharczyk v. State,* 235 Md. 334, 201 A. 2d 683. Under *Kucharczyk v. State, supra* the inconsistencies must occur within the witness' own testimony and relate to the pertinent issues of the case, see *Bell v. State,* 2 Md. App. 471, 235 A. 2d 307. This was not the situation here. Furthermore, "weight of the evidence and credibility of the witnesses are for the trier of facts to determine," *Dunlap v. State,* 1 Md. App. 444, 230 A. 2d 690. There was ample evidence to sustain the conviction.

*Judgment affirmed.*